UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WISCONSIN WINDOW CONCEPTS, INC.,

    Plaintiff,

    v.                                      Case No. 10-C-726

UNITED BROTHERHOOD OF CARPENTERS
& JOINERS OF AMERICA, CHICAGO REGIONAL
COUNCIL OF CARPENTERS,

    Defendant.

**DECISION AND ORDER**

**I. FACTUAL BACKGROUND**

Wisconsin Window Concepts ("WWC" or "plaintiff") is a Wisconsin corporation located in Waukesha, Wisconsin, which specializes in selling and installing window treatments, shelving, mirrors, shower doors, and bath hardware. (DPSOF ¶ 3–4.) WWC is a small corporation comprised of two owners, one salesperson, and five employees who are inside workers and installers. (DPSOF ¶ 5.) The five inside workers and installers assemble and cut products at the warehouse and then install products at the purchaser's home or business. (DPSOF ¶ 6.) In the last two years, WWC has not subcontracted the installation of its products. (DPSOF ¶ 6.)

Mark Mersberger ("Mersberger") is the President of WWC and has been affiliated with the company since it began operations in 1995. (DPSOF ¶ 7.) He generally oversees accounts receivable and payable, prepares payroll, orders products, makes personnel decisions, and supervises the employees' daily activities. (DPSOF ¶ 8.)

In or around May 2008, WWC entered into a contract with M.A. Mortenson Construction ("Mortenson") to install window blinds at a job-site known as the "Aurora Summit Project." (DPSOF ¶ 10.) Mortenson is a signatory to a collective bargaining agreement with the Chicago Regional Council of Carpenters ("Union" or "defendants") and requires all subcontractors performing carpentry work to comply and adhere to Mortenson's obligations with regard to its collective bargaining agreement with the Union. (DPSOF ¶ 11.) Specifically, the contract between Mortenson and WWC contained an attachment to the Agreement, titled "Exhibit F - Collective Bargaining Agreements." Exhibit F provided the following:

> Subcontractor acknowledges that Mortenson is signatory to certain collective bargaining agreements with trade unions (the Unions) as listed below. Subcontractor further acknowledges that Mortenson is required by such agreements to perform all work that is within the scope and jurisdiction of the collective bargaining agreements, only with workers who are members of one or more of the Unions, including work performed at the Project site by subcontractors. Subcontractor agrees that to the extent the Work at the Project site falls within the scope and jurisdiction of one or more of the collective bargaining agreements, Subcontractor shall comply with and adhere to all of Mortenson's obligations with respect to such agreements.

(DPSOF Ex. 3)

Mersberger contacted a union representative from the Union to obtain a "union" carpenter to install aluminum blinds at the Aurora Summit Project. (DPSOF ¶ 12.) Mersberger met with Tom Doleschy ("Doleschy"), a Union representative, in 2008. (DPSOF ¶ 12–16.) Doleschy provided Mersberger with an "Employer Questionnaire/Application" ("Questionnaire"). (DPSOF ¶ 13.) The first paragraph of the Questionnaire states "This form must be filled out completely prior to signing the Area Agreement. This information is necessary to process and extend the terms of the Collective Bargaining Agreement to any contractor on behalf of the Carpenters Union." (DPSOF ¶ 14.) The Questionnaire also states that the "Employer hereby acknowledges receipt of the Area Agreement." (DPSOF ¶ 15.)

Mersberger signed the Questionnaire on behalf of the plaintiff on October 31, 2008. (DPSOF ¶ 16.)

On or about December 29, 2008, Mersberger obtained a wage and fringe benefit bond through West Bend Mutual Insurance Company on behalf of the plaintiff. (DPSOF ¶ 35.) The Wage and Fringe Benefit Bond form signed by Mersberger states:

> WHEREAS, the above name Principal is employing employees or subcontracting work to contractors represented by the CHICAGO REGIONAL COUNCIL OF CARPENTERS, for the purpose of performing certain classified carpentry in the territory within the jurisdiction of said Union as defined in that certain Agreement now in full force and effect between the Employer and the Union.

(DPSOF ¶ 36.)

On January 12, 2009, Mersberger signed the Memorandum of Agreement with the Union. The Memorandum of Agreement states, in relevant part:

> 1. The Employer recognizes the Union as the sole and exclusive bargaining representative on behalf of its employees who are working within the territorial and occupational jurisdiction of the Union.
>
> 2. The Employer has reviewed sufficient evidence and is satisfied that the Union is the exclusive bargaining representative of a majority of its employees presently working within the territorial and occupational jurisdiction of the Union.
>
> 3. The Employer and the Union agree to incorporate into this Memorandum Agreement and to be bound by the Agreements negotiated between the Chicago Regional Council of Carpenters and various employers and employer associations, including all Area Agreements for the period beginning with the execution of this Memorandum Agreement and ending on the expiration dates of any current and successor Agreements which are incorporated herein (see attached list) . . . .
>
> 4. The Employer agrees to be bound to the terms of the various Trust Agreements to which contributions are required to be made under the Agreements incorporated in Paragraph 3, including all rules and regulations adopted by the Trustees of each Fund.

(Compl. App. A; DPSOF ¶¶ 20–22.)

The Memorandum of Agreement does not contain language limiting the agreement between the

3

plaintiff and the Union to the Aurora Summit Project. (DPSOF ¶ 25.) Mersberger admitted that when reading the term "collective bargaining agreement" in the Questionnaire and the Memorandum of Agreement, he thought the collective bargaining agreement was between the Union and the Union's employees. (DPSOF ¶ 34.) Mersberger thought that by signing the Memorandum of Agreement he would be able to use one of the Union's carpenters at the Aurora Summit Project, that the carpenter would report his hours to the Union, and that the Union would then send WWC an invoice for the carpenter's work. (DPSOF ¶¶ 30, 33.) He admits, however, that these assumptions were not based on information provided by the Union. (DPSOF ¶ 33.)

Upon completing the Memorandum of Agreement, Doleschy gave Mersberger the name and telephone number of a Union member named Steven Pollpeter ("Pollpeter"). (DPSOF ¶ 31.) The plaintiff hired Pollpeter to install the blinds at the Aurora Summit Project. (DPSOF ¶ 32.)

In or around the summer of 2009, a representative of the Funds contacted WWC to review WWC's "books." (Plaintiff's Proposed Statement of Fact ("PPSOF") ¶ 36.) While reviewing WWC's "books," the Funds representative asked for information pertaining to all employees, not just Pollpeter. (PPSOF ¶ 36.) Mersberger objected to the request, believing that WWC's employees were not union members. (PPSOF ¶ 36.)

In January 2010, WWC received a notice from Chicago Regional Council of Carpenters Welfare Fund and Pension Fund ("Funds") indicating that WWC owed Funds $109,000.00 for contributions and damages for the first half of 2009. (Compl. ¶ 25.) Additionally, the Union filed a formal grievance under the alleged collective bargaining agreement. (Compl. ¶ 26.) In connection with this grievance, the Union has asked WWC to produce employee and payroll records from 2009 through 2010. (Compl. ¶ 26.)

4

## II. PROCEDURAL BACKGROUND

On August 24, 2010, the plaintiff filed this action against the defendants seeking declaratory judgment and injunctive relief.[1] The case was assigned to this court and the parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73 (E.D. Wis.).[2]

In its complaint, the plaintiff seeks an order from the court declaring the plaintiff's rights and obligations in relation to the Memorandum of Agreement. Specifically, the plaintiff asks the court to find the following:

   A.  That the [Memorandum of Agreement] was never effective as a "collective bargaining agreement" as contemplated by federal law, and that it was void *ab initio* due to *fraud in the execution*; or alternatively,

   B.  That Plaintiff WWC is not "an employer engaged primarily in the building and construction industry" as contemplated by 29 U.S.C. 158(f).

(Compl. ¶ 31.)

On April 22, 2011, the defendants filed a motion for summary judgment, asking the court to find that the plaintiff did enter into a collective bargaining agreement and that WWC is "engaged primarily in the building and construction industry." They therefore seek dismissal of the plaintiff's complaint with prejudice. The motion is now fully briefed and is ready for resolution by the court. For the reasons that follow, the court will grant the defendants' motion.

## III. SUMMARY JUDGMENT STANDARD

A district court shall grant summary judgment where "the movant shows that there is no genuine

---

[1] Along with its complaint, the plaintiff filed a motion for temporary injunction, which was denied by District Judge J.P. Stadtmueller on October 8, 2010.

[2] The court has jurisdiction over the case pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

5

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party asserting that a fact is genuinely disputed must support the assertion by

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). However, a mere scintilla of evidence in support of the nonmovant's position is insufficient. *See Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "'[I]n the light most favorable' . . . 'simply means that summary judgment is not appropriate if the court must make a choice of inferences.'" *Harley-Davidson Motor Co., Inc. v.*

6

*PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (quoting *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997)).

**IV. DISCUSSION**

The plaintiff argues that it is not bound by the collective bargaining agreement with the Union because the Memorandum of Agreement is void due to fraud in the execution. However, even if the court finds that the Memorandum of Agreement is valid, the plaintiff asserts that it is not "an employer engaged primarily in the building and construction industry" and it therefore does not fall within the narrow exception provided by Section 8(f) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–169. An employer not within the exception cannot enter into a collective bargaining agreement unless the union is supported by a majority of the employer's employees. WWC therefore argues that because it does not fit within the exception, and because the majority of its employees do not support the Union, any collective bargaining agreement between WWC and the Union is invalid. The court will address each argument below.

**A. Fraud in the Execution**

"'Fraud in the execution' . . . entails deceiving a party to an agreement as to the very nature of the instrument it signs so that the party 'actually does not know what he is signing, or does not intend to enter into a contract at all.'" *Laborers' Pension Fund v. A&C Envtl., Inc.*, 301 F.3d 768, 779 (7th Cir. 2002) (quoting *Rosenthal v. Great Western Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (Cal. 1996)). The Seventh Circuit recognizes "fraud in the execution" as a viable defense against suit by funds to collect delinquent contributions because the collective bargaining agreement is deemed void. *Id*. "In order to establish the defense of fraud in the execution, [a party must] prove that it did not know that it was signing a collective bargaining agreement that obligated it to make contributions . . . and that its ignorance was excusable

7

because it had reasonably relied upon the representations of the union representative." *Id*. at 780.

Under the first part of the fraud in the execution test, WWC must demonstrate that Mersberger did not know he was signing a collective bargaining agreement. Both parties agree that when Mersberger read "collective bargaining agreement" in the Questionnaire and Memorandum of Agreement, he assumed that the collective bargaining agreement was between the Union and the Union's employees. (DPSOF ¶ 34.) Mersberger believed that by signing the Memorandum of Agreement, WWC could use a "union" carpenter to install blinds at the Aurora Summit Project. (DPSOF ¶ 27.)

The court therefore accepts Mersberger's assertion that he did not know he was signing a collective bargaining agreement. However, WWC must demonstrate not only that Mersberger did not know he was signing a collective bargaining agreement, but that Mersberger's ignorance of the fact that he was signing a collective bargaining agreement was reasonably based on Doleschy's representations.

Based on the facts presented by WWC, Doleschy made certain affirmative representations to Mersberger. Doleschy indicated that WWC could get one "union" carpenter as requested, so long as Mersberger completed standard paperwork. (PPSOF ¶ 14.) This standard paperwork included the Employer Questionnaire/Application and the Memorandum of Agreement. (PPSOF ¶¶ 9, 14.)[3] WWC also claims that "Mr. Doleschy told Mr. Mersberger he would advise WWC of the compensation specifics for the one 'union' carpenter." (PPSOF ¶ 26.)

The majority of the facts presented by the plaintiff merely highlight that Doleschy told Mersberger that by filling out certain paperwork, a "union" carpenter could do WWC's work at the Aurora Summit

---

[3] The plaintiff also states that "Mr. Doleschy's express representations confirmed Mersberger's stated understanding that the Employer Questionnaire/Application and subsequent documents would simply enable WWC to borrow a carpenter from the union for the sole, exclusive, and limited purpose of satisfying the M.A. Mortenson Co. requirement regarding the installation of blinds on the Aurora Summit Project and nothing else." (PPSOF ¶ 7.) However, WWC never explains what "express representations" Doleschy made, nor does it point to evidence supporting this assertion. A statement of fact that is not supported by evidence does not comply with Civil L.R. 56(b)(2)(B)(ii) and must therefore be disregarded.

8

Project. This statement is true. Of course, Doleschy did not also inform Mersberger that in order to have a "union" carpenter at the Aurora Summit Project, WWC would be unionized, and he had no duty to do so.[4]

However, WWC does present a material issue of fact as to whether Doleschy represented that the forms Mersberger was signing on behalf of WWC would not bind WWC to a collective bargaining agreement. Specifically, Mersberger states that "Mr. Doleschy told Mr. Mersberger he would advise WWC of the compensation specifics for the one 'union' carpenter." (PPSOF ¶ 26.) One could reasonably infer, from this comment, that Doleschy led Mersberger to believe that WWC would only employ one "union" carpenter; not that WWC would be unionizing in order to employ that one carpenter. Drawing all inferences in favor of the non-moving party, the court finds that Mersberger may have relied on the possible misrepresentation by Doleschy. The question therefore turns on whether this reliance was reasonable.

The text of the Memorandum of Agreement should have caused Mersberger to question whether he was entering the plaintiff into a collective bargaining agreement. At the outset, the Memorandum of Agreement reads: "THIS AGREEMENT is entered into between the Chicago Regional Council of Carpenters ("Union") and the Employer." Above this statement, the line after "Employer" has been filled in with "Wisconsin Window Concepts, Inc." Thus, WWC was clearly entering into a binding agreement with the Union.

The Memorandum of Agreement continues by setting forth four agreed upon statements. In the

---

[4] *See Smith v. Duffey*, 576 F.3d 336, 338 (7th Cir. 2009) ("When an alleged fraud consists of failing to tell the alleged victim something . . . rather than telling him something that is untrue, he must show that there was a duty to tell him that something. Such a duty–call it the duty of candor–is sometimes imposed as a matter of law, as in the case of a fiduciary relationship.") No such duty is alleged in this case; therefore, the heightened duty to disclose does not apply.

9

first paragraph, the Memorandum of Agreement states that "[t]he Employer recognizes the Union as the sole and exclusive bargaining representative on behalf of its employees who are working within the territorial and occupational jurisdiction of the Union." (Compl. App. A.) The plaintiff argues that the use of "its" in this first paragraph creates ambiguity as to the meaning of the paragraph. Thus, the plaintiff claims that Mersberger's interpretation that "its" referred to the Union and not to WWC is reasonable in light of his discussion with Doleschy. The court disagrees.

"Interpretation of an unambiguous contract is a question of law" and therefore appropriately addressed in a motion for summary judgment. *Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 (7th Cir. 2003). A term in a contract is ambiguous if it is open to reasonable alternative interpretations. *Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1389 (7th Cir. 1993). However, where the language is clear regarding the question at hand, the term is not ambiguous. *Rizzo*, 351 F.3d at 793.

A plain reading of the Memorandum of Agreement demonstrates that the term "employees" must relate to the term "employer," which in this case refers to WWC. As the defendants aptly note, "[i]t simply would not make sense that the Union would ask plaintiff to recognize the Union as the sole and exclusive bargaining representative of carpenters employed by the Union . . . . According to plaintiff's interpretation of the Memorandum of Agreement, the answer would be that the Union bargains with itself." (Pls.' Reply Br. 8.) Construing the term "its" in such a way would create an unreasonable result. *See India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 658 (7th Cir. 2010) ("'The presumption in commercial contracts is that the parties were trying to accomplish something rational. Common sense is as much a part of contract interpretation as is the dictionary or arsenal of canons.'") (quoting *Dispatch Automation, Inc. v. Richards*, 280 F.3d 1116, 1120 (7th Cir. 2002)). Thus, the use of the term "its" does not make the Memorandum of Agreement ambiguous.

10

Additionally, a district court in this circuit was presented with similar language in a Memorandum of Understanding and found that employer was bound by the collective bargaining agreement contained in that Memorandum of Understanding. In *Board of Trustees of the Masons and Plasterers Pension Fund Local 56 Dupage County, Illinois v. O'Donnell Plastering, Inc.*, No. 01 C 9257, 2003 WL 174207, *5 (N.D. Ill. Jan. 27, 2003), the employer claimed that "it did not know it was signing a collective bargaining agreement; rather, [the employer] believed it was signing a document that permitted the transfer of contributions from [one union to another]." *Id*. The court noted that the Memorandum of Understanding expressly provided that the "Employer hereby recognizes the Union as the sole and exclusive collective bargaining agent." *Id*. Based on this language, the court found the employer's ignorance as to the nature of the contract to be unreasonable. *Id*.

Like the employer in *O'Donnell Plastering*, the plaintiff should have realized, based on the language of the Memorandum of Agreement, that it was binding itself to a collective bargaining agreement with the Union. It has long been established that, in the absence of fraud, "a man in possession of his faculties who signs a contract cannot relieve himself from the obligations of the contract by saying he did not read [the contract], or did not know or understand what [the contract] contained." *Colvin ex rel. Bricklayers Union Local No. 6 Indiana Pension Fund v. Larry E. Webb Construction Co., Inc.*, 542 F. Supp.2d 890, 896 (N.D. Ind. 2008) (citing *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875)). There is no evidence suggesting that Mersberger is not "in possession of his faculties," and as determined earlier, no fraud exists. Thus, WWC is bound by the contract that it signed.

Based on the discussion above, the court finds that even if the plaintiff had relied on the alleged misrepresentations by Doleschy, such reliance is unreasonable because the meaning of the contract is

11

clear.[5] I will therefore grant the defendants' motion for summary judgment with regard to this issue.

## 2. "Engaged Primarily in the Building and Construction Industry"

Finding that the plaintiff entered into a collective bargaining agreement with the defendants does not end the inquiry. Instead, the plaintiff argues that it is not "engaged primarily in the building and construction industry" and is therefore not exempt from the majority status requirement of the NLRA. The plaintiff therefore claims that, despite signing the collective bargaining agreement, the agreement is invalid under the NLRA.

Generally, the NLRA "prohibits employers and unions from entering into collective bargaining agreements unless the union is backed by a majority of the relevant bargaining unit's employees." *Cement Masons' Pension Fund, Local 502 v. Dukane Precast, Inc.*, 822 F. Supp. 1316, 1318 (N.D. Ill. 1993). However the NLRA creates an exception for employers engaged in the building and construction industry. Section 8(f) provides:

> It shall not be unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members . . . because (1) the majority status of such labor organization has not been established[.]

29 U.S.C. 158(f).

"General contractors and subcontractors who perform their work at the construction site are engaged primarily in the building or construction industry." *Dukane Precast*, 822 F. Supp. at 1319. *See also United Rentals Highway Techs., Inc. v. Indiana Constructors, Inc.*, 518 F.3d 526, 530 (7th Cir.

---

[5] The defendants also claim that Mersberger "had numerous opportunities to gain an understanding of the agreement he was entering into with the Carpenters Union," including reviewing the Employer Questionnaire/Application, the Wage and Fringe Benefit Bond, and the Memorandum of Agreement. (Defs.' Mem. in Supp. 8–14.) Because the court finds that the contract was clear, there is no need to address these supporting arguments.

12

2008) ("The distinction drawn by the [8(f)] exception is between workers at a construction site and workers who supply or deliver the building materials to the site but do not work there."). An employer is not within the 8(f) exception if it merely manufactures or assembles products to be installed by others at the construction site, or if the "construction" work is only a negligible part of the employer's business. *Clark v. Ryan*, 818 F.2d 1102, 1107 (4th Cir. 1987); *Dukane Precast*, 822 F. Supp. at 1319.

WWC employs six people. (DPSOF ¶ 5.) Of those six people, five employees are inside workers and installers. (DPSOF ¶ 5.) "WWC's inside workers and installers are responsible for assembling and cutting the products at the warehouse and then going into the field to install the products." (DPSOF ¶ 6.) WWC has not subcontracted the installation of its products in the two years prior to the filing of the defendants' motion for summary judgment. (DPSOF ¶ 6.)

Based on the record, the plaintiff does more than merely manufacture and deliver products that are then installed by others. In fact, WWC installs all of its own products. The installation component of the business is therefore more than negligible. Additionally, in May 2008, WWC entered into a contract to assemble, cut, and install blinds at the Aurora Summit Project. Installing blinds at the Aurora Summit Project demonstrates that the plaintiff does perform its work "at the construction site." WWC's activities demonstrate that it is "primarily engaged in the building and construction industry," and therefore qualifies for the exception provided by § 8(f).

## V. CONCLUSION

As discussed above, I find that the plaintiff is bound by the Memorandum of Agreement and that the plaintiff qualifies for the exception to majority status provided by Section 8(f). The court will therefore grant the defendants' motion for summary judgment.

**NOW THEREFORE IT IS ORDERED** that the defendants' motion for summary judgment be

13

and hereby is **GRANTED**;

    **IT IS FURTHER ORDERED** that the action be and hereby is **DISMISSED** with prejudice.

    **IT IS FURTHER ORDERED** that the clerk enter judgment accordingly.

    **SO ORDERED** this 17th day of November 2011, at Milwaukee, Wisconsin.

                                **BY THE COURT:**

                                s/ William E. Callahan, Jr.
                                WILLIAM E. CALLAHAN, JR.
                                United States Magistrate Judge